SAMUEL CHURCH v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

November 8, 1907.

Nos. 15,297—(39).[2]

**Killing Cattle—Question for the Jury.**
> In an action for damages occasioned by the killing of cattle by a railway train, it is *held* that there was evidence reasonably tending to show that the railway company was negligent in failing to maintain its fence in proper repair and that the case should have been submitted to the jury.

[1] Reported in 113 N. W. 886.          [2] October, 1907, term.

Action in the district court for Goodhue county to recover $80 damages for the killing of two cows. The case was tried before Williston, J., who directed the jury to find a verdict in favor of defendant. From an order denying his motion to set aside the verdict and for a new trial, plaintiff appealed. Reversed.

*J. C. McClure,* for appellant.

*F. W. Root* and *F. M. Wilson,* for respondent.

ELLIOTT, J.

This was an action to recover damages caused by the death of certain stock alleged to have been occasioned by the neglect of the railway company to keep its fence in proper repair. The trial court directed a verdict for the defendant, and the plaintiff appealed from an order denying his motion for a new trial. The appeal presents the question whether there was any evidence which required the question of the negligence of the railway company to be submitted to the jury.

There was evidence tending to show the following facts: The appellant was the owner of a farm in Goodhue county across which the respondent's railway ran in a northwesterly and southeasterly direction. On each side of the track, on the right of way, the company maintained a fence which was constructed by stringing barbed wires attached by staples to wooden posts set in the ground sixteen feet apart. Near the appellant's house, on the northeasterly side of the track, was a cattle yard. This yard was seventeen rods long, and was so constructed that the fence, on the east side of the right of way, was used as the westerly line fence of the yard. There was no gate in the yard fence, but on the northerly part, near the appellant's buildings, there were bars through which the cattle were driven to and from the yard. Northwesterly from the point where the yard fence was joined to the railroad fence, the company had put in a farm crossing, with swinging gates, on each side of the track. These gates open towards the track. On the evening of June 19, 1904, the appellant drove seven cows from his pasture through these gates, and then through the bars in the yard fence, into the cattle yard. The bars and both crossing gates were then closed, and remained closed all night. Between 10 and 11:30 o'clock the cows escaped from the

yard and went onto the track, where two of them were killed. The appellant claims that they entered the track through the railway fence, which the company had failed to keep in proper repair. The respondent admitted that the stock was killed on the track by its train, but denied that it was negligent, and offered evidence tending to show that the cows must have entered the right of way through the gate, instead of through the fence. We think there was evidence which tended to sustain the plaintiff's case. It appeared, or at least there was evidence tending to show, that the fence had stood for at least nine years, during which time no repairs had been made upon it. Many of the posts were so decayed that they would not hold the staples, and the wires sagged down. One witness testified that the morning after the accident he examined the ground to see whether there were tracks leading up onto the railway tracks. He testified:

> I found tracks there. They went right up from the point D onto the railroad track, catacornered up the embankment. They went from the point in the fence where the staples were out of the posts.

The point D, referred to, was on the railroad fence which formed one side of the cattle yard. The railway company's foreman testified that he did not examine to see whether "any creature had climbed up the embankment, onto the track." Two weeks before the accident the section foreman's attention was called to the fence, and he stated that they were going to put in a new fence, but that he would repair the old one so as to hold the cows. No repairs were made. If this witness testified truthfully, the company was negligent and responsible for damages resulting therefrom. It is not necessary to refer to the evidence offered by the railway company, as it cannot reasonably be claimed that it was of such force as to completely destroy the evidence on the part of the plaintiff to which we have called attention.

The case should have been submitted to the jury with proper instructions, and, this not having been done, we are constrained to reverse the order denying a new trial. So ordered.